Jacob M. Polakoff, Bar No. 035832006
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel. (215) 875-3000
Fax: (215) 875-4604
Email: JPOLAKOFF@BM.NET

*Attorney for Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## NEWARK DIVISION

| | |
|---|---|
| BACK2HEALTH CHIROPRACTIC CENTER, LLC, individually and on behalf of all others similarly situated, | Case No.: 2:20-cv-6717 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | DEMAND FOR JURY TRIAL |
| THE HARTFORD FINANCIAL SERVICES GROUP, INC. and SENTINEL INSURANCE COMPANY, LTD., | |
| Defendants. | |

Plaintiff Back2Health Chiropractic Center, LLC. a/k/a Back2Health Chiropractic and Therapy Center ("Plaintiff" or "Back2Health") brings this case on behalf of itself and all others similarly situated, against Defendant The Hartford Financial Services Group, Inc. and Defendant Sentinel Insurance Company, LTD. (collectively, "Defendants"), and alleges as follows:

## <u>NATURE OF THE ACTION</u>

1.      Back2Health is a chiropractic, physical therapy and rehabilitation center. Like many businesses, including physical therapists in New Jersey, Back2Health was forced to significantly curtail its services due to the COVID-19 Pandemic (also known as the "Coronavirus," the "novel Coronavirus," or "SARS-CoV-2"), and the Executive Order(s) issued by the Governor of New Jersey as described below.

2.     Back2Health sought to protect itself – and reasonably believed that it had protected itself – in the event that its operations were suspended or significantly reduced for reasons outside of its control beyond just damage to the physical premises (such as fire), by purchasing an "all-risk" property Spectrum Business Owner's Policy through Defendants (the "Special Property Coverage Form"). *See* **Exhibit A**. An "all-risk" property policy provides broad coverage for losses resulting from any cause unless expressly excluded.

3.     Among other coverages, the Special Property Coverage Form specifically includes coverage for Business Income for twelve (12) months of actual loss sustained. The policy also provides coverage for Action of Civil Authority for thirty (30) days. The Special Property Coverage Form (by way of endorsement) also provides Limited Fungi, Bacteria or Virus coverage for thirty (30) days.

4.     The Business Income and Civil Authority coverages purchased by Plaintiff do not include, and are not subject to, any relevant exclusion for losses caused by pandemics like COVID-19. But even to the extent a virus exclusion would apply, Defendants have rendered this exclusion inapplicable by expressly providing for limited Time Element Coverage when a cessation of business operations is caused by a "virus".

5.     Notwithstanding that Plaintiff has paid for coverage, when Plaintiff suffered an actual loss of Business Income as a result of a covered cause of loss and needed its Business Income coverage, Defendants wrongfully – and in contravention of the policy – denied Plaintiff's insurance claim. *See* **Exhibit B**.

6.     Plaintiff is not alone. Defendants have systematically refused to pay all their insureds under their Business Income and Civil Authority coverages for losses suffered due to COVID-19 (and related civil authority orders), regardless of whether the implicated insurance

policy has an applicable pandemic exclusion or not, and regardless of whether the policy had applicable "Limited Fungi, Bacteria Or Virus Coverage[.]"

## PARTIES

7.     Plaintiff Back2Health Chiropractic Center, LLC a/k/a Back2Health Chiropractic and Therapy Center is a limited liability company registered in New Jersey with its principal place of business in Fair Lawn, New Jersey. Back2Health provides cutting edge Chiropractic Care, Acupuncture treatments, Physical and Massage therapy.

8.     Defendant The Hartford Financial Services Group, Inc. ("The Hartford") is a Delaware company with its principal place of business in Hartford, Connecticut. The Hartford is a financial holding company for a group of insurance and non-insurance subsidiaries.

9.     Defendant Sentinel Insurance Company, Ltd. ("Sentinel") is a Connecticut company with its principal place of business in Hartford, Connecticut.  Sentinel is a wholly-owned subsidiary of The Hartford. At all times relevant times, Sentinel sold and issued insurance policies in New Jersey, including, but not limited to Back2Health.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because Plaintiff, as well as other members of the Classes, and Defendants are citizens of different states, and because: (a) the Classes consist of at least 100 members; (b) the amount in controversy exceeds $5,000,000 exclusive of interest and costs; and (c) no relevant exceptions apply to Plaintiff's claim.

11.     This Court has personal jurisdiction over Defendants, because a substantial portion of the alleged wrongdoing occurred in the state of New Jersey, and Defendants have sufficient contacts with the state of New Jersey. Venue is proper in this District under 28 U.S.C. § 1391(b)(3) because a substantial portion of the acts and conduct giving rise to the claims occurred within the District.

## FACTUAL BACKGROUND

12.     Plaintiff has a Spectrum Business Owner's Policy through Defendants and pays an annual premium of $1,550.00 to Defendants, who issued to Plaintiff a renewal of Policy No. 13 SBA TQ8223 DW, for the annual period beginning August 22, 2019. Plaintiff performed all its obligations under the Policy, including the payment of premiums. The Covered Property is 33-00 Broadway, Suite 209, Fair Lawn, New Jersey 07410.

13.     Some insurance policies cover specific and identified risks, such as tornadoes, hurricanes, or fires. However, most property policies in the United States of America, including those sold by Defendants, are "all-risk" policies. These types of policies cover **_all_** risks of loss, and only exclude narrow and specifically enumerated risks.

14.     In the Special Property Coverage Form (the policy issued to Plaintiff), Defendants agreed to pay "for direct physical loss of or physical damage to Covered Property ... caused by or resulting from a Covered Cause of Loss." A Covered Cause of Loss is defined as all "RISKS OF DIRECT PHYSICAL LOSS" except those that are expressly and specifically listed in the Limitations or Exclusions sections of the policy. *See* Exhibit A, Special Property Coverage Form, at A.3.

15.     Losses due to the COVID-19 Pandemic and the New Jersey Executive Order(s) are a Covered Cause of Loss under Defendants' policies with the Special Property Coverage Form because they constitute "RISKS OF DIRECT PHYSICAL LOSS" and are not otherwise excluded.

16.     In the Special Property Coverage Form, apart from general coverage, as part of additional coverages, Defendants agreed to pay for Plaintiff's actual loss of Business Income sustained due to the suspension (partial slowdown or complete cessation) of Plaintiff's operations caused by direct physical loss of **_or_** physical damage to property. Specifically, the policy provides:

o. **Business Income**

(1) We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or physical damage to property at the "scheduled premises", including personal property in the open (or in a vehicle) within 1,000 feet of the "scheduled premises", caused by or resulting from a Covered Cause of Loss.

(4) Business Income means the:

(a) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no direct physical loss or physical damage had occurred; and

(b) Continuing normal operating expenses incurred, including payroll.

*See* Exhibit A, Special Property Coverage Form, at A.5.o.

17.      The Special Property Coverage Form also includes Civil Authority coverage, under which Defendants agreed to pay for the actual loss of Business Income sustained when access to the scheduled premises is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area. *See* Exhibit A, Special Property Coverage Form, at A.5.q ("This insurance is extended to apply to the actual loss of Business Income you sustain when access to your 'scheduled premises' is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your 'scheduled premises'").

18.      The Special Property Coverage Form also includes Time Element Coverage when business operations are suspended because of "loss or damage to property caused by 'fungi', wet or dry rot, bacteria or virus[.]" *See* Exhibit A, Limited Fungi, Bacteria or Virus Coverage, Form SS 40 93 07 05, at B.1.f.  (If a "suspension is necessary due to loss or damage to property caused by 'fungi', wet or dry rot, bacteria or virus, then our payment under the Time Element Coverage is limited to the amount of loss and expense sustained in a period of not more than 30 days[.]")

19.      As explained below, the COVID-19 Pandemic throughout New Jersey and the related Executive Order(s) issued by New Jersey civil authorities constitute a Covered Cause of

Loss triggering the Business Income and Civil Authority provisions of the Special Property Coverage Form.

**A.** *Covered Cause of Loss*

    **1.**    <u>**COVID-19 Pandemic**</u>

20.    On January 30, 2020, the World Health Organization ("WHO") declared the COVID-19 outbreak a "Public Health Emergency of International Concern."[1] Later, on March 11, 2020, the WHO declared COVID-19 a global health pandemic. On March 13, 2020, President Trump declared a national emergency in the face of a growing public health and economic crisis due to the COVID-19 global pandemic.

21.    In New Jersey alone, there have been more than 160,445 lab confirmed cases of COVID-19, and approximately 11,698 related deaths.[2]

22.    In Bergen County, in which Back2Health is located, there have been more than 18,000 confirmed cases of COVID-19, and 1,579 deaths.[3]

23.    According to published research, the virus that causes COVID-19 remains stable and transmittable for up to three hours in aerosols, up to four hours on copper, up to twenty-four hours on cardboard, and up to two to three days on plastic and stainless steel.[4]

    **2.**    <u>**The Closure Order**</u>

24.    COVID-19 has caused civil authorities nationwide, including civil authorities with jurisdiction over Plaintiff's business, to issue orders requiring the suspension of businesses to slow

---

[1] https://www.who.int/news-room/detail/30-01-2020-statement-on-the-second-meeting-of-the-international-health-regulations-(2005)-emergency-committee-regarding-the-outbreak-of-novel-coronavirus-(2019-ncov) (last visited May 27, 2020).
[2] https://covid19.nj.gov/#live-updates (last visited May 31, 2020).
[3] *Id.*
[4] https://www.nih.gov/news-events/nih-research-matters/study-suggests-new-coronavirus-may-remain-surfaces-days (last visited May 31, 2020).

down the spread of the virus. Nearly every state in the country has or had an order restricting the operation of businesses and related stay at home orders.

25.    At the peak, "the number of Americans under instructions to stay at home has persisted at an astonishing level . . . accounting for a stunning 95 percent of the population." *See* https://www.nytimes.com/interactive/2020/us/coronavirus-stay-at-home-order.html.

26.    On March 9, 2020, New Jersey Governor Philip D. Murphy issued Executive Order No. 103 recognizing that "the spread of COVID-19 within New Jersey constitutes an imminent public health hazard that threatens and presently endangers the health, safety, and welfare of the residents of one or more municipalities or counties of the State."[5] Accordingly, Governor Murphy declared that "a Public Health Emergency and State of Emergency exist in the State of New Jersey."[6]

27.    On March 16, 2020, Governor Murphy issued Executive Order No. 104, which implemented social distancing requirements in order to reduce the rate of community spread of COVID-19.[7]

28.    On March 21, 2020, Governor Murphy issued Executive Order No. 107 ("Closure Order"), which superseded Executive Order No. 104 and mandated that the "brick-and-mortar premises of all non-essential retail businesses must close to the public as long as this Order remains in effect."[8]

29.    Additionally, the Closure Order stated that, "to mitigate community spread of COVID-19, it is necessary to limit the unnecessary movement of individuals in and around their

---

[5] https://nj.gov/infobank/eo/056murphy/pdf/EO-103.pdf (last visited May 27, 2020).
[6] *Id.*
[7] https://nj.gov/infobank/eo/056murphy/pdf/EO-104.pdf (last visited May 28, 2020).
[8] https://nj.gov/infobank/eo/056murphy/pdf/EO-107.pdf (last visited May 27, 2020).

communities and person-to-person interactions in accordance with CDC and DOH guidance" and that "the best way for New Jersey residents to keep themselves, their families, and their communities safe during the COVID-19 outbreak is to stay at home as much as possible . . . ." Accordingly, this Closure Order mandated that "[a]ll New Jersey residents shall remain home or at their place of residence . . ." unless they are engaging in one of nine specified activities. *Id.*

30.    Later on March 23, 2020, Governor Murphy issues an Executive Order requiring that "all elective surgeries performed on adults, whether medical or dental, and all elective invasive procedures performed on adults, whether medical or dental, are suspended in the State."[9]

### 3.    Impact of COVID-19 and Closure Order

31.    Back2Health and the proposed Classes defined below have suffered an actual loss of Business Income due to the suspension of operations. In the case of Back2Health, it had been forced to cease most of its operations.

32.    The COVID-19 Pandemic and the Closure Order (and similar civil authority orders) constitute a Covered Cause of Loss, as they constitute "RISKS OF DIRECT PHYSICAL LOSS."

33.    The suspension of Plaintiff's operation was caused by "direct physical loss of *or* physical damage to property" in the form of both a loss of access to the insured property for business purposes caused by the COVID-19 Pandemic, and the Closure Order or the actual damage in the form of the likely physical presence of COVID-19 on or within the property.

34.    The COVID-19 Pandemic and the Closure Order also implicate the Civil Authority coverage, because access to the scheduled premises was specifically prohibited in part (to Plaintiff's clients) by order of a civil authority as the direct result of a "RISK[] OF DIRECT

---

[9] https://nj.gov/infobank/eo/056murphy/pdf/EO-109.pdf (last visited May 31, 2020).

PHYSICAL LOSS" to property in the immediate area of the scheduled premises from the COVID-19 Pandemic.

35.    Having suffered a loss covered by Defendants' insurance policy (under multiple coverages), Plaintiff submitted a claim to Defendants. Defendants denied Plaintiff's claim. *See* Exhibit B.

36.    Defendants based this denial primarily on:

   a.  The lack of "physical loss or damage to property at a scheduled premises";

   b.  A "pollution" exclusion that excludes losses "caused by or resulting from the discharge, dispersal, seepage, migration, release or escape" of pollutants or contaminants which are defined as "solid, liquid, gaseous or thermal irritant or contaminant[s]…."

   c.  A "'fungi', wet rot, dry rot, bacteria and virus" exclusion that excludes the "presence, growth, proliferation, spread or any activity of 'fungi', wet rot, dry rot, bacteria, or virus".

As summarized by Defendants:

As we understand the facts, you will suffer a loss of business income due to a cancellation of business at your Medical Office. The closing was due to concerns over the spread of coronavirus. As no direct physical loss or damage has occurred to property at the scheduled premises listed in your policy or at any location that would qualify as a dependent property. Additionally, no business personal property owned by you suffered any directly physical loss or damage from this event.

37.    But none of these purported reasons are credible bases for Defendants' denial of Plaintiff's claim.

38.    First, as described above, in the context of COVID-19 and/or the Closure Order, there was a suspension of operations caused by "physical loss of or damage caused by or resulting from" a "Covered Cause of Loss" to property at a scheduled premise.

39.     Second, to the extent that COVID-19 was present at the scheduled premise, a virus is *not* a solid, liquid, gaseous or thermal irritant or contaminant under the policy and, therefore, does not implicate the pollution exclusion.

40.     Finally, the policy does not exclude coverage for a national state of disaster like COVID-19, which is more akin to a tornado than to proliferation of wet rot. The "virus" exclusion, as written, like the "wet rot" and "dry rot" exclusion (to which it is conjoined) would be understood by insureds to exclude "the presence, growth, proliferation, spread or any activity" of virus akin to rot – not to exclude coverage in the context of a global pandemic.

41.     But even if the "virus" exclusion is understood to implicate COVID-19, then the policy would provide separate coverage for a suspension of operations caused by a virus when a Time Element Coverage applies. As set forth in the policy:

> **f.**  The following applies only if a Time Element Coverage applies to the "scheduled premises" and only if the suspension of "operations" satisfies all the terms and conditions of the applicable Time Element Coverage.
>
> **(1)**  If the loss which resulted in "fungi", wet or dry rot, bacteria or virus does not in itself necessitate a suspension of "operations", but such suspension is necessary due to loss or damage to

> property caused by "fungi", wet or dry rot, bacteria or virus, then our payment under the Time Element Coverage is limited to the amount of loss and expense sustained in a period of not more than 30 days unless another number of days is indicated in the Declarations. The days need not be consecutive. If a covered

42.     Here, there is a suspension of operations necessary due to loss or damage to property caused by a virus. And while "Time Element Coverage" is not defined in the policy, "Time Element" is a broad term used in the insurance industry to include both business interruption and civil authority coverage.[10] Because the policy provides coverage for both Business Income and Civil Authority, there is limited Time Element Coverage.

43.     The simple truth is that Defendants pre-determined their intent to deny coverage for any business interruption claim related to the COVID-19 Pandemic and related civil authority orders.

44.     Boiled down to its essence, the subject matter of this case is simple. Defendants have, on a widespread and class-wide basis, refused to provide Business Income and Civil Authority coverage related to the COVID-19 Pandemic and the resultant executive orders by civil authorities that have required the suspension of business/practice *no matter* the language or scope of coverage in any particular insurance policy.

## CLASS ALLEGATIONS

45.     Plaintiff brings this action individually and on behalf of the following similarly situated classes (the "Classes") pursuant to Rule 23(a), 23(b)(1), 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

46.     Plaintiff seeks to represent nationwide classes defined as follows:

### Business Income Breach Class

All persons and entities that: (a) had Business Income coverage under a property insurance policy issued by Defendants with a Limited Fungi, Bacteria Or Virus Coverage endorsement; (b) suffered a suspension of their operations related to COVID-19 or the Closure Order (or other civil authority order related to COVID-

---

[10] *See*, *e.g.*, https://www.irmi.com/term/insurance-definitions/time-element-loss (last visited May 27, 2020) (defining "Time Element Loss" as "loss resulting from in ability to use a property. Examples are business interruption, extra expense, rental income, etc.")

11

19) impacting the premises covered by their property insurance policy; (c) made a claim under their property insurance policy issued by Defendants; and (d) were denied coverage by Defendants.

### Civil Authority Breach Class

All persons and entities that: (a) had Civil Authority coverage under a property insurance policy issued by Defendants with a Limited Fungi, Bacteria Or Virus Coverage endorsement; (b) suffered a loss of Business Income caused by an order of a civil authority that specifically prohibited access to the premises covered by their property insurance policy as the direct result of the risks caused by the COVID-19 Pandemic to property in the immediate area of the insureds covered property; (c) made a claim under their property insurance policy issued by Defendants; and (d) were denied Civil Authority coverage by Defendants for the loss of Business Income.

47.     Plaintiff also seeks to represent nationwide declaratory judgment classes defined as

follows:

### Business Income Declaratory Judgment Class

All persons and entities with Business Income coverage under a property insurance policy issued by Defendants with a Limited Fungi, Bacteria Or Virus Coverage endorsement that suffered a suspension of their operations related to COVID-19 or the Closure Order (or other civil authority order related to COVID-19) impacting the premises covered by their property insurance policy.

### Civil Authority Declaratory Judgment Class

All persons and entities with Civil Authority coverage under a property insurance policy issued by Defendants with a Limited Fungi, Bacteria Or Virus Coverage endorsement that suffered a loss of Business Income caused by an order of a civil authority that specifically prohibited access to the premises covered by their property insurance policy as the direct result of the risks caused by the COVID-19 Pandemic to property in the immediate area of the insureds covered property.[11]

48.     Excluded from the proposed Classes are Defendants, any parent companies,

subsidiaries, affiliates, officers, directors, legal representatives, employees, co-conspirators, all

governmental entities, and any judge, justice, or judicial officer presiding over this matter, as well

---

[11] The two Declaratory Judgment Classes together will be referred to as the "Declaratory Judgment Classes."

as members of their staff and immediate families. Plaintiffs reserve the right to amend the Class definitions above or add appropriate subclasses following discovery. Also excluded from the Classes are insureds that have not complied with applicable provisions of their policies, such as the payment of premiums.

49.    Plaintiff reserves the right to amend the Class definitions above or add appropriate subclasses following discovery.

50.    This action is brought and may be properly maintained as a class action. There is a well-defined community of interests in this litigation and the members of the Classes are easily ascertainable.

51.    The members in the proposed Classes are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the members of the Classes in a single action will provide substantial benefits to the parties and the Court.

52.    This action involves common questions, which predominate over questions affecting individual members of the Classes, including (without limitation):

- whether members of the Classes suffered a Covered Cause of Loss based on the common policies issued by Defendants;

- whether the COVID-19 Pandemic (and/or an order of a civil authority related to the COVID-19 Pandemic) constitutes a Covered Cause of Loss;

- whether Defendants' Business Income coverage applies to a suspension of business operations caused by the COVID-19 Pandemic (and/or by an order of a civil authority related to the COVID-19 Pandemic);

- whether a suspension of business operations caused by the COVID-19 Pandemic (and/or by an order of a civil authority related to the COVID-19 Pandemic) qualifies as a suspension of business operations caused by direct physical loss of or physical damage to property;

- whether the "virus" exclusion precludes losses related to the COVID-19 Pandemic;

13

- whether the limited Time Element Coverage when a partial slowdown or complete cessation of business operations is caused by a "virus" implicates coverage;

- whether an order by a civil authority related to the COVID-19 Pandemic qualifies an insured for Civil Authority coverage;

- whether members of the Classes sustained damages as a result of Defendants denying their claims made under the common policies; and

- whether Defendants breached its contracts of insurance by denying Class members' Business Income and Civil Authority claims related to the COVID-19 Pandemic.

53.    Defendants engaged in a course of common conduct that gave rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other members of the Classes. Identical business practices and harms are involved. Individual questions, if any, are not prevalent in comparison to the numerous common questions that dominate this action.

54.    Plaintiff's claims are typical of those of the members of the Classes because they are based on the same underlying facts, events, and circumstances relating to Defendants' conduct, including the systematic denial of insurance coverage related to Business Income insurance and the COVID-19 Pandemic.

55.    Plaintiff will fairly and adequately represent and protect the interests of the Classes, has no interests incompatible with the interests of the Class members, and has retained counsel competent and experienced in class action and consumer protection litigation.

56.    Class treatment is superior to other options for resolution of the controversy because the relief sought for each member of the Classes is small enough such that, absent representative litigation, it would be infeasible for many members of the Classes to redress the wrongs done to them. Moreover, individualized litigation would create potential for inconsistent judgments on identical issues and increase the delay and expense to the parties and the Court. By

contrast, the class action device presents far fewer management difficulties, and provides the benefits of adjudication by a single court.

57.     As a result of the foregoing, class treatment under Federal Rule of Civil Procedure 23(b)(3) is appropriate.

58.     Class treatment is also appropriate under Federal Rule of Civil Procedure 23(b)(1). Plaintiff seeks class-wide adjudication related to Defendants' Business Income, and Civil Authority coverages. The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent adjudications.

59.     Class treatment is also appropriate under Federal Rule of Civil Procedure 23(b)(2). Defendants acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making appropriate final injunctive and declaratory relief.

**<u>CLAIMS FOR RELIEF</u>**

**<u>CLAIM I: BREACH OF CONTRACT - Business Income Coverage</u>**
**<u>(Plaintiff Individually and on Behalf of the Business Income Breach Class)</u>**

60.     Plaintiff hereby realleges and incorporates by reference all allegations raised in the preceding paragraphs as if fully stated herein.

61.     Plaintiff brings this claim against Defendants individually and on behalf of the members of the Business Income Breach Class.

62.     Plaintiff's insurance policy, as well as those of the members of the Business Income Breach Class, are contracts under which premiums were paid to Defendants in exchange for promises to pay Plaintiff and the Business Income Breach Class Members' losses for claims covered by Defendants' all-risk policy.

63.     The Special Property Coverage Form states that Defendants "will pay for the actual loss of Business Income you sustain due to the necessary suspension of your 'operations' during the 'period of restoration'... The suspension must be caused by direct physical loss of or physical damage to property at the 'scheduled premises'…caused by or resulting from a Covered Cause of Loss."

64.     "Operations" is defined as "business activities occurring at the 'scheduled premises' and tenantability of the 'scheduled premises.'"

65.     Suspension is defined (in relevant part) as "The partial slowdown or complete cessation of your business activities[.]"

66.     "Business Income" is defined as "Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no direct physical loss or physical damage had occurred" and "[c]ontinuing normal operating expenses incurred, including payroll."

67.     The COVID-19 Pandemic, and/or orders of civil authority related to the COVID-19 Pandemic (like the Closure Order) caused "direct physical loss of or damage to" the "Covered Property" under the Plaintiff's policy, and the policies of the other Business Income Breach Class members, by denying use of and damaging the Covered Property, and by causing a necessary suspension and reduction of operations during a period of restoration.

68.     Losses caused by the COVID-19 Pandemic, and/or orders of civil authority related to the COVID-19 Pandemic (like the Closure Order) thus triggered the Business Income provision of Plaintiff's and the other members of the Business Income Breach Class' insurance policies.

69.     Plaintiff and the members of the Business Income Breach Class have complied with all applicable provisions of their policies.

16

70.     Plaintiff and the members of the Business Income Breach Class made timely claims under their property insurance policies issued by Defendants.

71.     Defendants have breached their coverage obligations under Plaintiff and the Business Income Breach Class Members' policies by denying coverage for any Business Income losses incurred in connection with COVID-19 and/or orders of civil authority related to COVID-19 (like the Closure Order).

72.     As a direct and proximate result of Defendants' breaches, Plaintiff and the members of the Business Income Breach Class have sustained damages for which Defendants are liable, in an amount to be established at trial.

### CLAIM II: BREACH OF CONTRACT – Civil Authority Coverage
### (Plaintiff Individually and on Behalf of the Civil Authority Breach Class)

73.     Plaintiff hereby realleges and incorporates by reference all allegations raised in the preceding paragraphs as if fully stated herein.

74.     Plaintiff brings this claim against Defendants individually and on behalf of the members of the Civil Authority Breach Class.

75.     Plaintiff's policy, as well as those of the members of the Civil Authority Breach Class, are contracts under which premiums were paid to Defendants in exchange for promises to pay Plaintiff and the Civil Authority Breach Class Members' losses for claims covered by the policy.

76.     Plaintiff's policy, as well as those of the members of the Civil Authority Breach Class are extended to apply to losses "sustain[ed] when access to your 'scheduled premises' is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your 'scheduled premises.'"

17

77. The COVID-19 Pandemic caused the issuance of the Closure Order, which specifically prohibited access to Plaintiff and the Civil Authority Breach Class Members' scheduled premises (in whole or in part) based on "RISKS OF DIRECT PHYSICAL LOSS" to property in the immediate area of the scheduled premise.

78. Losses caused by the COVID-19 Pandemic thus triggered the Civil Authority provision of Plaintiff and the Civil Authority Breach Class Members' insurance policies.

79. Plaintiff and the Civil Authority Breach Class Members have complied with all applicable provisions of their policies.

80. Plaintiff and the Civil Authority Breach Class Members made timely claims under their property insurance policies issued by Defendants.

81. Defendants have breached their coverage obligations under Plaintiff and the Civil Authority Breach Class Members' policies by denying coverage for any Civil Authority losses incurred in connection with the COVID-19 Pandemic and/or orders of civil authority related to the COVID-19 Pandemic (like the Closure Order).

82. As a direct and proximate result of Defendants' breaches, Plaintiff and the Civil Authority Breach Class Members have sustained damages for which Defendants are liable, in an amount to be established at trial.

### CLAIM III: DECLARATORY JUDGMENT
### (Claim Brought on Behalf of the Declaratory Judgment Classes)

83. Plaintiff hereby realleges and incorporates by reference all allegations raised in the preceding paragraphs as if fully stated herein.

84. Plaintiff brings this claim against Defendants individually and on behalf of the members of the Declaratory Judgment Classes.

85.    Plaintiff's policy, as well as those of the members of the Declaratory Judgment Classes, are contracts under which premiums were paid to Defendants in exchange for promises to pay losses for claims covered by their insurance policies.

86.    Plaintiff and the members of the Declaratory Judgment Classes have complied with all applicable provisions of the policies.

87.    Defendants have denied claims related to COVID-19 and/or orders of civil authority related to COVID-19 (like the Closure Order) on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Declaratory Judgment Classes have filed a claim.

88.    An actual case or controversy exists regarding Plaintiff and the Declaratory Judgment Class Members' rights and Defendants' obligations under the policies to provide reimbursements for the full amount of losses incurred by Plaintiff and the Declaratory Judgment Classes Members in connection with COVID-19 and/or orders of civil authority related to COVID-19 (like the Closure Order).

89.    Pursuant to 28 U.S.C. § 2201, Plaintiff and the Business Income Declaratory Judgment Class Members seek a declaratory judgment from this Court declaring the following:

      a.    Plaintiff and the Business Income Declaratory Judgment Class Members' Business Income losses incurred in connection with necessary interruption of their businesses due to the COVID-19 Pandemic and/or orders of civil authority related to the COVID-19 Pandemic (like the Closure Order) are insured losses under their policies; and

      b.    Defendants are obligated to pay Plaintiff and the Business Income Declaratory Judgment Class Members for the amount of the Business Income losses incurred in connection with the period of restoration and the necessary interruption of their businesses at their insured property stemming from COVID-19 and/or orders of civil authority related to COVID-19 (like the Closure Order).

90.    Pursuant to 28 U.S.C. § 2201, Plaintiff and the Civil Authority Declaratory Judgment Class Members seek a declaratory judgment from this Court declaring the following:

    a. Plaintiff and the Civil Authority Declaratory Judgment Class Members' Business Income losses caused by an order of a civil authority that specifically prohibited access to the premises covered by their property insurance policy as the direct result of the risks caused by COVID-19 to property in the immediate area of the insureds covered property are insured losses under their policies; and

    b. Defendants are obligated to pay Plaintiff and the Civil Authority Declaratory Judgment Class for the amount of the Business Income losses incurred and to be incurred caused by an order of a civil authority that specifically prohibited access to the premises covered by their property insurance policy as the direct result of the risks caused by COVID-19 to property in the immediate area of the insureds covered property.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Classes, respectfully requests that the Court enter judgment against Defendants as follows:

i.    Entering an order certifying each of the proposed Classes;

ii.   Entering an order designating Plaintiff as Class Representative, and appointing Plaintiff's undersigned attorneys as Counsel for the Classes;

iii.  Entering judgment on Counts I, and II in favor of Plaintiff, the Business Income Breach Class, the Civil Authority Breach Class, and awarding damages for breach of contract in an amount to be determined at trial;

iv.   Entering declaratory judgments on Count III in favor of Plaintiff and the Declaratory Judgment Classes (as set forth in Count III);

v.    Ordering Defendants to pay both pre- and post-judgment interest on any amounts awarded;

vi.   Ordering Defendants to pay reasonable attorneys' fees and costs of suit; and

vii.  Ordering such other and further relief as may be just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all claims so triable.

Date:   June 1, 2020                    Respectfully submitted,

_s/ Jacob M. Polakoff,_
Jacob M. Polakoff, Bar No. 035832006
Shanon J. Carson*
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: 215-875-3000
Email: jpolakoff@bm.net
        scarson@bm.net

Greg F. Coleman*
Will Ladnier*
Jonathan B. Cohen*
**GREG COLEMAN LAW**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel: 865-247-0080
Email : greg@gregcolemanlaw.com
        will@gregcolemanlaw.com
        jonathan@gregcolemanlaw.com

Daniel K. Bryson*
Patrick M. Wallace*
**WHITFIELD BRYSON LAW LLP**
900 W. Morgan Street
Raleigh, NC 27605
Tel: 919- 600-5000
Email: dan@whitfieldbryson.com
        pat@whitfieldbryson.com

*pro hac vice forthcoming*

*Attorneys for Plaintiff and the putative classes*