**Not for Publication**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| BACK2HEALTH CHIROPRACTIC CENTER, LLC, *individually and on behalf of all others similarly situated,*<br><br>*Plaintiff,*<br><br>v.<br><br>SENTINEL INSURANCE COMPANY, LTD.,<br><br>*Defendant.* | Civil Action No. 20-6717 (JMV) (MF)<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

In this putative class action, Plaintiff alleges that Defendant breached its insurance policy by failing to provide coverage for losses Plaintiff experienced when it suspended business operations due to the COVID-19 pandemic. Presently before the Court is Defendant's motion to dismiss Plaintiff's nationwide class action claims under Federal Rules of Civil Procedure 12(b)(1) and (b)(2) for lack of standing and personal jurisdiction. The Court reviewed all the submissions in support and in opposition and considered the motion without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b).[1] For the reasons discussed below, the motion to dismiss is **DENIED**.

---

[1] Defendant's brief in support of its motion to dismiss will be referred to as "Def. Br.," D.E. 11-1. Plaintiff's opposition brief will be referred to as "Pl. Opp.," D.E. 14. Defendant's reply brief will be referred to as "Def. Reply," D.E. 16.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**[2]

Plaintiff Back2Health LLC is a New Jersey limited liability company operating as "a chiropractic, physical therapy and rehabilitation center." Compl. ¶¶ 1, 7.[3] Defendant Sentinel Insurance Company "is a Connecticut company with its principal place of business in Hartford, Connecticut." *Id.* ¶ 9. Sentinel is a wholly-owned subsidiary of the Hartford Financial Services Group, Inc. *Id.*[4] Sentinel "sold and issued insurance policies in New Jersey" including Back2Health's policy. *Id.*

Plaintiff has a Spectrum Business Owner's Policy through Defendant, covering Plaintiff's property in Fair Lawn, New Jersey. *Id.* ¶ 12. The policy is an "all-risk" policy, which means that the policy covers all risks of loss, except for "narrow and specifically enumerated risks." *Id.* ¶ 13. As a result of the COVID-19 pandemic and the stay-at-home orders and business restrictions implemented in "[n]early every state in the country," Plaintiff and the proposed classes have suffered lost income due to suspended operations. *Id.* ¶¶ 24, 31. The Complaint alleges the policy covers some of Plaintiff's financial losses. *Id.* ¶¶ 15-19, 26-42. Plaintiff notes that Executive Orders issued by New Jersey's governor prevented it from accessing its insured property and

---

[2] The factual background is taken from the Complaint ("Compl."), D.E. 1. When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

[3] Plaintiff indicates that no member of Back2Health Chiropractic Center, LLC is domiciled outside of New Jersey. D.E. 29.

[4] Plaintiff's Complaint listed the Hartford Financial Services Group, Inc. as a defendant in this action, however, Plaintiff filed a notice of voluntary dismissal and on July 14, 2020, Hartford Financial Services Group, Inc. was dismissed as a defendant in this action.

conducting its business, adding that losses stemming from the state-mandated closure are covered by the policy. *Id.* at ¶¶ 31-34.

After suffering losses, Plaintiff submitted a claim to Defendant, which was denied. *Id.* ¶ 35. Defendant based its denial on (1) the lack of physical damage to Plaintiff's property; (2) a pollution exclusion in the policy; and (3) "[a] 'fungi', wet rot, dry rot, bacteria and virus' exclusion that excludes the 'presence, growth, proliferation, spread or any activity of "fungi", wet rot, dry rot, bacteria, or virus.'" *Id.* ¶ 36. Defendants further explained that Plaintiff's losses were "due to concerns over the spread of coronavirus," and there was no "direct physical loss or damage" to the property, nor did any of Plaintiff's business or personal property suffer "any direct physical loss or damage from this event." *Id.*

Plaintiff brings this action individually and on behalf of four similarly situated nationwide classes. Compl. ¶¶ 45-46. First, Plaintiff asserts a "Business Income Breach Class," comprised of the following:

> All persons and entities that: (a) had Business Income coverage under a property insurance policy issued by Defendants with a Limited Fungi, Bacteria Or Virus Coverage endorsement; (b) suffered a suspension of their operations related to COVID-19 or the Closure Order (or other civil authority order related to COVID-19) impacting the premises covered by their property insurance policy; (c) made a claim under their property insurance policy issued by Defendants; and (d) were denied coverage by Defendants.

*Id.* ¶ 46. Second, Plaintiff indicates a "Civil Authority Breach Class," comprised of the following:

> All persons and entities that: (a) had Civil Authority coverage under a property insurance policy issued by Defendants with a Limited Fungi, Bacteria Or Virus Coverage endorsement; (b) suffered a loss of Business Income caused by an order of a civil authority that specifically prohibited access to the premises covered by their property insurance policy as the direct result of the risks caused by the COVID-19 Pandemic to property in the immediate area of the insureds covered property; (c) made a claim under their property

insurance policy issued by Defendants; and (d) were denied Civil Authority coverage by Defendants for the loss of Business Income.

*Id.*

Plaintiff also seeks to represent two nation-wide declaratory judgment classes. The first would be a "Business Income Declaratory Judgment Class," comprised of the following:

> All persons and entities with Business Income coverage under a property insurance policy issued by Defendants with a Limited Fungi, Bacteria Or Virus Coverage endorsement that suffered a suspension of their operations related to COVID-19 or the Closure Order (or other civil authority order related to COVID-19) impacting the premises covered by their property insurance policy.

*Id.* ¶ 47. And a second declaratory judgment class, a "Civil Authority Declaratory Judgment Class," comprised of the following:

> All persons and entities with Civil Authority coverage under a property insurance policy issued by Defendants with a Limited Fungi, Bacteria Or Virus Coverage endorsement that suffered a loss of Business Income caused by an order of a civil authority that specifically prohibited access to the premises covered by their property insurance policy as the direct result of the risks caused by the COVID-19 Pandemic to property in the immediate area of the insureds covered property.

*Id.*

Plaintiff filed its Complaint on June 1, 2020. D.E. 1. The Complaint alleges three claims: (1) "Breach of Contract – Business Income Coverage (Plaintiff Individually and on Behalf of the Business Income Breach Class)," Compl. ¶¶ 60-72; (2) "Breach of Contract – Civil Authority Coverage (Plaintiff Individually and on Behalf of the Civil Authority Breach Class)," *id.* ¶¶ 73-82; and (3) "Declaratory Judgment (Claim Brought on Behalf of the Declaratory Judgment Classes), *id.* ¶¶ 83-90. Defendant filed the present motion to dismiss on July 17, 2020. D.E. 11. Plaintiff filed opposition, D.E. 14, to which Defendant replied, D.E. 16. The Court held a telephonic status conference on the pending motion with counsel on March 8, 2021. D.E. 26.

## II. STANDARD OF REVIEW

### a. Rule 12(b)(1)

Defendant first moves to dismiss under Federal Rule of Civil Procedure 12(b)(1) and argues that Plaintiff lacks standing. "A motion to dismiss for want of standing is also properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). To decide a Rule 12(b)(1) motion, a court must first determine whether the party presents a facial or factual attack against a complaint. A facial attack contests "subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'" *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)). A factual attack challenges "the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise presenting competing facts.'" *Id.* at 346 (quoting *Constitution Party v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)). Here, Defendant relies solely on the allegations in the Complaint. Accordingly, Defendant presents a facial attack. As a result, like a Rule 12(b)(6) motion to dismiss, "the Court must consider the allegations of the complaint as true." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

### b. Rule 12(b)(2)

Defendant also moves to dismiss under Rule 12(b)(2) for lack of personal jurisdiction. In such a motion, the plaintiff "bears the burden of demonstrating the facts that establish personal jurisdiction." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). When a court "resolves the jurisdictional issue in the absence of an evidentiary hearing and without the benefit of discovery, the plaintiff need only establish a *prima facie* case of personal jurisdiction." *Otsuka*

*Pharm. Co. v. Mylan Inc.*, 106 F. Supp. 3d 456, 461 (D.N.J. 2015).  In such cases, a court "take[s] the allegations of the complaint as true." *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996).

However, once a defendant raises a jurisdictional defense, "a plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper." *Id.*  In other words, court looks beyond the pleadings to all relevant evidence and construes all disputed facts in favor of a plaintiff.  *See Carteret Sav. Bank v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992).  A plaintiff must establish "with reasonable particularity sufficient contacts between the defendant and the forum state." *Otsuka*, 106 F. Supp. 3d at 462 (citing *Mellon Bank (E) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)).  In addition, a court "may always revisit the issue of personal jurisdiction if later revelations reveal that the facts alleged in support of jurisdiction remain in dispute." *Otsuka*, 106 F. Supp. 3d at 462 n.5 (citing *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 331 (3d Cir.2009)).

A federal court "engages in a two-step inquiry to determine whether it may exercise personal jurisdiction": (1) "whether the relevant state long-arm statute permits the exercise of jurisdiction," and (2) "if so, [whether] the exercise of jurisdiction comports with due process" under the Fourteenth Amendment.  *Display Works, LLC v. Bartley*, 182 F. Supp. 3d 166, 172 (D.N.J. 2016) (citing *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 258-59 (3d Cir. 1998)).  *See also* Fed. R. Civ. P. 4(k)(1)(A) (indicating that service "establishes personal jurisdiction over a

defendant . . . who is subject to the jurisdiction of a court of general jurisdiction[5] in the state where the district court is located.").

"New Jersey's long-arm statute extends the state's jurisdictional reach as far as the United States Constitution permits, so the analysis turns on the federal constitutional standard for personal jurisdiction." *Id.* (citing *IMO Industries*, 155 F.3d at 259). Accordingly, the two steps are collapsed into one and "we ask whether, under the Due Process Clause, the defendant has certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007) (internal quotation marks omitted). In other words, to establish personal jurisdiction, the Due Process Clause requires (1) minimum contacts between the defendant and the forum; and (2) that jurisdiction over the defendant comports with "fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)).

"Personal, or in personam, jurisdiction, [generally] divides into two groups: 'specific jurisdiction' and 'general jurisdiction.'" *Display Works*, 182 F. Supp. 3d at 172 (citing *Burger King*, 471 U.S. at 472 n.14 (1985)). Specific jurisdiction "depends on an affiliatio[n] between the forum and the underlying controversy (i.e., an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation)." *Id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 284 n.6 (2014)). General jurisdiction "permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit." *Id.* (quoting *Walden*,

---

[5] General jurisdiction as used in Rule 4(k) refers to subject-matter jurisdiction rather than personal jurisdiction.

7

571 U.S. at 284 n.6). Personal jurisdiction can also be obtained through consent, waiver, or in-state service on a defendant. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 590-97 (1991) (regarding consent via a forum selection clause); *Burnham v. Superior Court of Cal.*, 495 U.S. 604, 628 (1990) (regarding in-state service); *In re Asbestos Products Liability Litigation (No. VI)*, 921 F.3d 98, 104-05 (3d Cir. 2019) (regarding waiver); *Jasper v. Bexar County Adult Detention Center*, 332 Fed App'x 718, 719 (3d Cir. 1999) (regarding consent).

### III.  ANALYSIS

Some context is necessary before addressing the parties' arguments. This putative class action is based on diversity subject-matter jurisdiction under 28 U.S.C. § 1332. As a result, state substantive law will apply pursuant to the relevant state's choice-of-law rules. For purposes of the current motion, the parties appear to agree that Plaintiff's breach of contract claim will be governed by New Jersey law. Defendant asserts that the Court does not have specific personal jurisdiction over it as to putative class members who reside outside of New Jersey (or whose claims will not be tied to Defendant's contacts with New Jersey). Defendant similarly asserts that Plaintiff does not have constitutional standing to allege claims on behalf of those same putative members.

#### a.  Personal Jurisdiction

Defendant concedes that it is subject to specific personal jurisdiction with respect to claims arising out of New Jersey insurance contracts. Def. Br. at 10. However, Defendant argues that there is no specific jurisdiction for "claims of nonresident class members with no adequate link to New Jersey[.]" *Id.* Plaintiff responds that Defendant's motion is premature because at the pleading stage, personal jurisdiction in a class action is determined based upon the class representative's claims rather than those of absent class members. Pl. Opp. at 18-19.

Defendant relies on the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court of California* to support its position. Def. Br. 10-11. In *Bristol-Myers*, a large group of Plaintiffs from California and thirty-three other states filed suit in California state court and asserted claims under California law, alleging they were injured by a Bristol-Myers Squibb's ("BMS") drug, Plavix. 137 S. Ct. 1773, 1778 (2017). The Court concluded that the California court was not permitted to exercise specific jurisdiction over BMS with respect to the nonresident plaintiffs' claims because these plaintiffs were not California residents and did not claim to be harmed in California. *Id.* at 1782. In doing so, the *Bristol-Myers* Court rejected the "sliding scale" approach to specific personal jurisdiction in which a defendant's overall contacts with a forum could be considered even if those contacts did not relate to a plaintiff's claim. *Id.* at 1781. The Supreme Court then observed that

> the nonresidents were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California. The mere fact that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California – and allegedly sustained the same injuries as did the nonresidents – does not allow the State to assert specific jurisdiction over the nonresidents' claims.

*Id.* In dissent, Justice Sotomayor noted that the "[t]he Court today does not confront the question whether its opinion here would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there." *Id.* at 1789 n.4 (Sotomayor, J., dissenting).[6]

---

[6] The majority in *Bristol-Myers* also observed the following: "[S]ince our decision concerns the due process limits on the exercise of specific jurisdiction by a State, we leave open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." *Id.* at 1783-84 (citing *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.,* 484 U.S. 97, 102, n.5 (1987)). Thus, accepting for argument's sake the validity of Defendant's

Following *Bristol-Myers*, "district courts are in disagreement as to whether, in a class action context, courts must have personal jurisdiction over the claims of the nonresident, unnamed class members." *Chernus v. Logitech, Inc.*, No. 17-673, 2018 WL 1981481, *7 (D.N.J. April 27, 2018). While some courts have concluded that *Bristol-Myers* applies in the class action context, *id.* (citing decisions from the Northern District of Illinois and the District of Arizona), "most of the courts that have encountered this issue have found that *Bristol-Myers* does not apply in the

---

position, because Plaintiff is proceeding in federal court, the Fifth Amendment may permit the Court to exercise personal jurisdiction over Defendant even if the Fourteenth Amendment does not. However, the Court is concerned that changes to the Federal Rules of Civil Procedure would be necessary to reflect the broader reach under the Fifth Amendment (assuming the validity of the broader scope).

The Federal Rules of Civil Procedure are promulgated pursuant to the Rules Enabling Act, 28 U.S.C. § 2072. Federal personal jurisdiction is provided under Rule 4(k), which provides in relevant part as follows:

> (k) TERRITORIAL LIMITS OF EFFECTIVE SERVICE.
>
> (1) *In General.* Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant:
>
> (A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located;
>
> . . .
>
> (2) *Federal Claim Outside State-Court Jurisdiction.* For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:
>
> (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
>
> (B) exercising jurisdiction is consistent with the United States Constitution and laws.

Fed. R. Civ. P. 4(k). Rule 4(k)(2) does not apply in this case, so the Court's analysis focuses on New Jersey's personal jurisdiction requirements under 4(k)(1)(A).

federal class action context," *id.* (citing decisions from six other district courts). The courts following the latter approach have "universally held that in a putative class action 1) courts are only concerned with the jurisdictional obligations of the named plaintiffs; and 2) unnamed class members are irrelevant to the question of specific jurisdiction." *Id.*

In *Cherus*, Chief Judge Wolfson followed this approach and determined that it was "more prudent" to address the issue of personal jurisdiction over the unnamed class members' claims at the class certification stage. *Id.* at *8. Chief Judge Wolfson explained that

> [a]t this stage of the litigation, no class has been certified, and therefore, to determine whether this Court has specific jurisdiction over Defendant with respect to the claims of the unnamed class members prior to class certification would put the proverbial cart before the horse. In other words, because the class members are not yet parties in this case – and they may not be – absent class certification, I need not analyze specific jurisdiction with respect to their claims. Rather, as the cases recognized, I only look to the named plaintiffs' claims . . . when addressing specific jurisdiction at this time.

*Id.*

This position finds further support in the Supreme Court's instruction that "an unnamed member of a certified class may be 'considered a "party" for the [particular] purpos[e] of appealing' an adverse judgment," but such a member is not considered a party prior to class certification. *Smith v. Bayer Corp.*, 564 U.S. 299, 313 (2011) (quoting *Devlin v. Scardelletti*, 536 U.S. 1, 7 (2002)).

This Court agrees with the reasoning in *Cherus* and concludes that it must only be satisfied that it has personal jurisdiction over Defendant for the claims advanced by Back2Health – the only named Plaintiff – at this stage of the litigation. Defendant concedes that this Court has specific jurisdiction over it for claims of its New Jersey policyholders, like Plaintiff. Def. Br. at 8, 10. The Court denies Defendant's motion as to personal jurisdiction.

11

### b. Standing

The Constitution provides that "judicial Power" extends to "Cases" and "Controversies[.]" U.S. Const. art. III, § 2. To meet the case-or-controversy requirement, a plaintiff must show that it has standing to sue. *See Raines v. Byrd*, 521 U.S. 811, 818 (1997) (citation omitted). To establish Article III standing, a plaintiff "must demonstrate '(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision.'" *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016) (quoting *Neale v. Volvo Cars of N. Am., LLC,* 794 F.3d 353, 358-59 (3d Cir. 2015) (internal quotation marks omitted and punctuation modified)).

Here, Defendant does not appear to contest that Plaintiff has standing to bring its claims arising under New Jersey law. Def. Br. at 3; Pl. Opp. at 4. Instead, Defendant argues that Plaintiff does not have standing to bring common law breach-of-contract claims that arise under the laws of states in which Plaintiff has no connection and for alleged breaches that did not harm Plaintiff. *Id.* at 3-8. In response, Plaintiff argues that "Defendant's motion . . . is better understood as a motion to strike allegations under Rule 12(f) or as a premature motion to deny class certification under Rule 23." Pl. Opp. at 4. Plaintiff continues that Defendant does not challenge whether Plaintiff has standing but, rather, whether Plaintiff is the appropriate representative for out-of-state policyholders; this question is appropriately considered under Rule 23's framework. *Id.*

The Third Circuit has established that "putative class members need not establish Article III standing. Instead, the 'cases or controversies' requirement is satisfied so long as a class representative has standing, whether in the context of a settlement or litigation class." *Mielo v. Steak 'N Shake Operations, Inc.*, 897 F.3d 467, 478 (3d Cir. 2018) (quoting *Neale*, 794 F.3d at 362). Both *Mielo* and *Neale* lend support to Plaintiff's position – that as long as the named plaintiff

has standing, it can bring claims on behalf of a nationwide class. In *Neale*, eight named plaintiffs from six different states sought to represent a nationwide class of plaintiffs – or, in the alternative, six statewide subclasses from each of the states that a named Plaintiff was from – to bring design defect claims against Volvo. *Neale*, 794 F.3d at 356. Volvo argued that all putative class members must have Article III standing, but the Third Circuit rejected this argument and held that only the named Plaintiff must have standing.[7] *Id.* at 358, 362. The *Neale* court characterized Volvo's arguments "related to the differences between claims among the separate statewide classes" as confusing Rule 23's requirements with Article III standing and noted that "whether [a class representative] may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation." *Id.* at 368 (alteration in original) (quoting 7AA Charles A. Wright et al., Fed. Prac. & Proc. Civ. § 1785.1 (3d ed. 2014)). The Circuit rejected Volvo's challenge to the plaintiffs' standing but remanded the case for different reasons. *Id.* at 369. Thus, the Third Circuit would have permitted the named plaintiffs to proceed with the nationwide claims, indicating that the plaintiffs from six states had standing to assert claims on behalf of unnamed plaintiffs in the other forty-four states.

Similarly, in *Mielo*, two plaintiffs who were directly injured at two Steak 'n Shake restaurant locations in Pennsylvania sought to sue on behalf of a class of people that may have been injured at Steak 'n Shake locations around the country. 897 F.3d at 473. Specifically, the named plaintiffs sought to enjoin Steak 'n Shake to adopt policies in compliance with the

---

[7] Similarly, the Supreme Court has ruled that courts look only to the named plaintiffs for assessing diversity jurisdiction. *Supreme Tribe of Ben-Hur v. Cauble*, 255 U.S. 356, 364 (1921).

Americans with Disabilities Act. *Id.* at 474. Defendant Steak 'n Shake challenged the named plaintiffs' standing to seek relief beyond the two Pennsylvania locations at which they were directly injured. *Id.* at 480. The Third Circuit rejected the defendant's argument and noted that it conflated standing with the requirements of Rule 23. *Id.* The court determined that the named plaintiffs sufficiently alleged the elements of Article III standing, while concluding that they failed to satisfy the requirements of Rule 23(a). *Id.* at 482. Thus, the Third Circuit found that two plaintiffs that were injured in Pennsylvania had standing to pursue claims on behalf of a nationwide class of plaintiffs that were injured in other states.

  Defendant here makes a slightly different argument. For purposes of its motion, Defendant concedes that Plaintiff has standing as to a New Jersey class. Defendant continues that a putative out-of-state Plaintiff has standing as to his/her respective state's class. But, Defendants argue, Plaintiff does not have standing as to putative out-of-state Plaintiffs (or Plaintiffs who cannot establish specific personal jurisdiction over Defendant in New Jersey). In light of *Neale* and *Mielo*, the Court disagrees. Article III standing is a constitutional requirement that directly impacts a court's subject-matter jurisdiction. As the Third Circuit in *Neale* recognized, it began with the Article III issue because a court has an obligation to assure itself of a party's standing. *Neale*, 794 F.3d at 358 (citations omitted). As a result, the Court concludes that if the Third Circuit had concerns about a named plaintiff's standing to raise claims for putative out-of-state members, the Circuit would have addressed the issue *sua sponte*. The Third Circuit did not do so in either *Neale* or *Mielo*.

  Here, Defendant cites to decisions from the District of New Jersey – including this Court's decision in *Semeran v. Blackberry Corp.*, No. 15-750, 2016 WL 3647966 (D.N.J. July 6, 2016) – which found that a named plaintiff lacked standing to assert claims under the laws of states in

14

which he did not reside. Def. Br. at 4. In *Semeran*, the parties did not raise *Neale* and *Mielo* had not yet been decided. In addition, the Court did not analyze *Neale* in *Semeran*. In any event, to the extent *Semeran* is inconsistent with *Neale* or *Mielo*, the Third Circuit's binding precedent controls. As a result, Defendant's motion to dismiss for lack of standing is denied.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss Plaintiff's nationwide claims, D.E. 11, is denied. An appropriate Order accompanies this Opinion.

Dated: March 15, 2021

*John Michael Vazquez, U.S.D.J.*